In the Matter of BERNARD STOLZ, Petitioner, against BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Third Department, July 24, 1957.

*Edmund A. Koblenz* and *A. Abba Koblenz* for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* and *John R. Davison* of counsel), for respondent.

HALPERN, J. This is a proceeding under article 78 of the Civil Practice Act to review the determination of the Board of Regents suspending the petitioner's license to practice medicine for one year.

The petitioner was charged with fraud or deceit in the practice of medicine within the purview and meaning of paragraph (a) of subdivision 2 of section 6514 of the Education Law, in that he had issued prescriptions for narcotic drugs in various false names for the purpose of supplying the drugs to one George Lockwood. It was also charged that he had pleaded guilty to a violation of section 438 (now § 3351) of the Public Health Law, growing out of the same act. This was made the basis of an additional charge under paragraph (b) of subdivision 2 of section 6514 of the Education Law, which authorizes the imposition of discipline upon a medical practitioner who had been convicted of a crime.

The case was heard first by a subcommittee of the Medical Grievance Committee, in accordance with the provisions of subdivision 4 of section 6515 of the Education Law. The subcommittee found that the petitioner was guilty of the charges made against him and recommended that his license be suspended for a period of six months. In explanation of the fixing of this measure of discipline, the subcommittee said: "In determining the measure of discipline to be imposed in this case, we have taken into consideration the respondent's assertions before us that he was moved by sympathy to help George Lockwood rid himself of the drug habit. We are inclined to believe that respondent was not governed solely by monetary considerations. This is borne out by the fact that there is no further proof in the record, other than the two prescriptions mentioned herein, of respondent's charging exorbitant fees for supplying drugs to Lockwood. We have further considered the fact that respondent fully realizes the fraud and deceit perpetrated by him in the issuance of these prescriptions and his statement that he would not again fall into this error. We cannot, however, overlook or completely

condone the respondent's wrongdoing in this case. We accordingly recommend that for his misconduct the respondent's license as a physician should be suspended for a period of six months."

The findings and recommendations of the subcommittee were unanimously adopted by the Medical Grievance Committee. The case was then reviewed, pursuant to section 211 of the Education Law, by the Regents' Committee on Discipline. The Regents' Committee agreed with the findings of guilt but recommended that the petitioner's license be suspended for only three months. In its report, the Committee on Discipline reviewed the evidence fully, pointing out both the aggravating and the extenuating circumstances, and concluded: " In reaching our own conclusion as to the proper measure of discipline, we have taken account of the disposition of other proceedings involving physicians who have prescribed narcotics for known addicts, but have not done so as a regular business. The present case involves prescription for one addict only. It does not involve a mercenary course of conduct. Against the factor of issuing prescriptions in names other than that of the addict, there is the extenuating circumstance that Respondent has put some limit on his prescribing; and there is persuasive evidence of Respondent's good character * * * In all the circumstances, and in view of the measure of discipline in other cases in the same field, we conclude that the proper measure of discipline here is license suspension for a period of three months."

The case then went to the Board of Regents. The board adopted a resolution, accepting and sustaining the findings of guilt but rejecting the recommendations of both the Medical Grievance Committee and the Committee on Discipline, as to the measure of discipline, and, without any explanation, directing the suspension of the petitioner's license for a period of one year.

Upon this application to review the Regents' determination, no question is raised as to the guilt of the petitioner of the violations charged against him. The only question raised concerns the measure of discipline. Prior to the adoption of subdivision 5-a of section 1296 of the Civil Practice Act (L. 1955, ch. 661), the courts had no power to review the penalty, punishment or measure of discipline imposed by an administrative agency (*Matter of Barsky* v. *Board of Regents,* 305 N. Y. 89, affd. 347 U. S. 442). Subdivision 5-a was adopted in order to overcome the holding of the *Barsky* case (see Proceedings of New York State Bar Assn., Report of Committee

on Administrative Law, 1954, p. 95; 1955, pp. 200–201; memorandum filed by Dept. of Educ. in opposition to bill, McKinney's 1955 Session Laws, p. 1786).

Subdivision 5-a of section 1296 provides that in an article 78 proceeding the court may determine: '' Whether the respondent abused his discretion in imposing the measure of punishment or penalty or discipline involved in the determination ''.

Under this statute, we now have the power to review the measure of discipline imposed by administrative agencies but this grant of power must be reasonably construed in the light of the settled principles governing the relationship between the courts and administrative agencies. Obviously, the words '' abuse of discretion '' cannot reasonably be given so broad an interpretation as to allow the courts to substitute their judgment, as to the appropriate measure of discipline, for that of the administrative agency. If that were done, the power of administration would, to a large extent, be transferred from the administrative agency to the courts since the measure of punishment or discipline is often the heart of the determination. We believe that, reasonably construed, the statute authorizes us to set aside a determination by an administrative agency, only if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness. As the memorandum of Governor Harriman in approving the bill indicates, the purpose of the bill was to provide a remedy for '' one who suffers  *  *  *  an excessive penalty '' (N. Y. State Legis. Annual [1955], pp. 447–448). An analogy may be found in the power of the court to set aside an award by condemnation commissioners on the ground that it is excessive. The usual formulation of the rule is that the award may be set aside if the excessiveness is so great as to '' shock the sense of justice of the court '' (*Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583, 585).

In this case, even after giving full consideration to the extenuating circumstances referred to in the reports of the committees, we cannot say that the one-year suspension is so disproportionate to the offense as to be shocking to one's sense of fairness. The Committee on Discipline referred in its report to other cases in which the board had exercised leniency but we know nothing of the circumstances of those cases; even slight differences in circumstances may justify a difference between 3 months and 12 months in the period of the suspension of a practitioner's license.

The fact that the Board of Regents disagreed with its subordinate bodies does not of itself establish that the board's action was an abuse of its discretion. The responsibility was ultimately that of the board and its judgment is controlling, in the absence of a showing of arbitrariness. As we have seen, the concept of arbitrariness, as applied to the measure of discipline or punishment, means the imposition of a measure which is wholly disproportionate to the offense.

Finally, the petitioner stresses the fact that the Board of Regents gave no reasons for its choice of the measure of discipline or for its rejection of the reasoned recommendations of its subordinate committees. This factor might be of importance in a case in which the punishment or discipline appeared on its face to be disproportionate to the offense charged. In such case, the board might well be required to state its findings as to the special circumstances which led it to adopt the particular measure of discipline but, as we have seen, in the present case, the discipline imposed is well within the permissible range of punishment appropriate to the inherent nature of the offense. It is true that a statement of reasons would be helpful to the court in any case, in the exercise of its newly granted power to review the extent or measure of punishment, but we cannot insist upon a statement of reasons when there is no apparent disproportion between the nature of the offense and the extent of the punishment. It may fairly be assumed, without any explicit statement to that effect, that the board selected the particular measure of discipline because it believed it to be appropriate to the nature of the offense.

As we have already noted, chapter 661 of the Laws of 1955 was enacted in order to overcome the holding of the court in *Matter of Barsky* v. *Board of Regents* (305 N. Y. 89, *supra*). The statute may be regarded as a legislative adoption of the views expressed in the dissenting opinion of FULD, J. In his opinion (pp. 106–107), Judge FULD quoted with approval the statement by the Regents' Committee on Discipline that " the imposition in any instance of discipline beyond the statutory minimum of censure and reprimand must * * * be based either on the inherent nature of the respondent's violation of the disciplinary statute or on an evidentiary showing that the respondent's conduct justifies more than the minimum discipline ".

Applying that principle to this case, we find that the " inherent nature " of the violation was sufficient to authorize the measure of discipline imposed and therefore there was no need

for the Board of Regents to make "an evidentiary showing" justifying its action.

The determination should be confirmed, without costs.

FOSTER, P. J., BERGAN, COON and GIBSON, JJ., concur.

Determination confirmed, without costs.