## (March 28, 1983)

■ AWRICH RESTAURANT, INC., Doing Business as CARIBBEAN RESTAURANT, Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent the

New York State Liquor Authority, dated August 18, 1982, which, after a hearing, *inter alia,* revoked the petitioner's on-premises liquor license. Determination confirmed and proceeding dismissed, on the merits, without costs or disbursements. The petitioner licensee, which owns the subject restaurant bar and grill, is a corporation which first received an on-premises liquor license on October 19, 1970. Since January 3, 1977 Sydney Taylor has been the sole officer and principal of said corporation. By notice of pleading and hearing, dated February 20, 1981, the licensee was charged with violating subdivision 6 of section 106 of the Alcoholic Beverage Control Law in that it suffered or permitted the licensed premises "to become disorderly in that it suffered or permitted females on the licensed premises to solicit male patrons therein for immoral purposes on December 5, 1979." After a hearing, the charge was sustained by the hearing officer and thereafter by the respondent State Liquor Authority. The record herein contains substantial evidence, adduced through the testimony of two police officers, that on December 5, 1979, in the absence of Taylor, the bartender of the licensed premises permitted and participated in the act of solicitation for the purposes of prostitution. Subdivision 6 of section 106 of the Alcoholic Beverage Control Law provides in pertinent part: "6. No person licensed to sell alcoholic beverages shall suffer or permit * * * such premises to become disorderly." It has been consistently held that "to sustain a violation of section 106 it must be demonstrated that the licensee had knowledge or the opportunity through reasonable diligence to acquire knowledge of the alleged acts" (*Matter of Leake v Sarafan,* 35 NY2d 83, 86; *Matter of Triple S. Tavern v New York State Liq. Auth.,* 40 AD2d 522, affd 31 NY2d 1006; *Matter of Richjen Rest. v State Liq. Auth.,* 51 NY2d 847). It is true that there was no evidence in this record that Taylor had actual knowledge of the disorder which occurred at his bar on December 5, 1979. With respect to constructive knowledge, it has been held that a single isolated act on the part of an employee will not ordinarily support a finding that the licensee suffered or permitted the premises to become disorderly (*Matter of Leake v Sarafan, supra; Matter of Triple S. Tavern v New York State Liq. Auth., supra; Matter of La Vigna Rest. Corp. v New York State Liq. Auth.,* 83 AD2d 867). However, where the employee is an agent of the licensee, and that employee "is instrumental in creating the disorder, it is generally not necessary to establish a foreseeable pattern of conduct" and a single incident will suffice for the purpose of holding the licensee responsible (*Matter of Club 95 v State Liq. Auth.,* 23 NY2d 784, 785; *Matter of Falso v State Liq. Auth.,* 43 NY2d 721; *Matter of Manhattan Scene v State Liq. Auth.,* 58 AD2d 1010; *Matter of Cuti v Roth,* 50 AD2d 1044). At the hearing conducted by the respondent, Taylor testified that he usually stayed in the premises from 10:00 A.M. until about 10:00 P.M. The bartender involved in the instant disorder had been employed by Taylor in that capacity since 1977, and worked at the premises during the night shift, i.e., from 7:00 P.M. until 3:30 A.M. Taylor specifically testified that on the nights that he left at 10:00 P.M., the bartender was in charge of the premises. Taylor further testified that it was the bartender's duty to (1) deal with any disorder if it came up in the premises, (2) ask those who were involved in the disorder to leave, (3) call the police if the disorderly patrons refused to leave and (4) make sure that the premises were operating in an orderly fashion. In view of this testimony, there was substantial evidence to support a finding that the bartender was exercising managerial authority when Taylor, the principal of the licensee, was not present. Accordingly, under the circumstances, the licensee may be penalized for even a single instance of disorder committed or tolerated by the employee. As the Court of Appeals stated in *Matter of Falso v State Liq. Auth.* (*supra,* pp 722-723): "The hearing

officer found that the licensee regularly left his brother in charge of the licensed premises during one hour in the morning and four hours in the afternoon when the licensee was not there. That finding was the predicate for imposition of the penalty. The Appellate Division confirmed the authority's determination, noting that, while the licensee's brother may not have had an official managerial title, there was substantial evidence to support the conclusion that the brother exercised managerial authority with reference to activities on the licensed premises when the licensee was not present. It is not necessary that the management responsibility delegated to the employee be that for the conduct of the entire enterprise, e.g., including purchase and sale of supplies, physical maintenance of the premises; it suffices if the employee is given responsibility for the operation of the premises and the conduct of the licensed activity thereon on other than a casual or temporary basis. Hence, here, as we did in *Martin* [*Matter of Martin v State Liq. Auth.*, 41 NY2d 78], we uphold the Appellate Division. The conclusion that the licensee had vested managerial authority in his brother as bartender is a factual determination. We agree with the Appellate Division that there is substantial evidence in the record for its support and that the failure to confer a managerial title does not negate the conclusion as to this employee's status. As a proposition of law, there can be no question that, for the purposes of the proscription of subdivision 6 of section 106 of the Alcoholic Beverages [*sic*] Control Law, a licensee normally is chargeable with the conduct of an employee who has been given managerial responsibility." Petitioner further contends that the penalty imposed by the respondent, i.e., revocation of its liquor license and a $1,000 bond forfeiture, for one act of solicitation for the purposes of prostitution, is so disproportionate to the offense as to shock one's sense of fairness (*Matter of Pell v Board of Educ.*, 34 NY2d 222). We disagree. The State Liquor Authority is entitled to consider, in imposing a penalty, after charges are sustained, the nature and gravity of the violation in question and "the previous record and history of the licensee and the licensed premises" (*Matter of Johnston v Rohan*, 2 AD2d 932). In the latter regard, the record indicates that numerous letters of warning dating back to November, 1977 have been issued by respondent on the subject premises with respect to violations of subdivision 6 of section 106 of the Alcoholic Beverage Control Law. Under these circumstances, the penalty imposed should not be disturbed (*Matter of Pell v Board of Educ., supra; Matter of Stolz v Board of Regents of Univ. of State of N. Y.*, 4 AD2d 361). We have reviewed petitioner's remaining argument and find it to be without merit. Damiani, J. P., Mangano and Boyers, JJ., concur.

Thompson, J., dissents and votes to grant the petition, annul the determination and dismiss the charge, with the following memorandum: As the majority concedes, there is no evidence in the record to support a finding of actual knowledge of the disorder. The evidence adduced at the hearing was also insufficient to establish that Taylor should have known of the disorderly condition. The bartender involved, a man with 30 years experience as a bartender, had been employed by Taylor in that capacity since 1977. He had no record of arrests for any crime, including prostitution-related offenses. There was no evidence in the record that the bartender had been involved in any previous disorder on the premises (see *Matter of Martin v State Liq. Auth.*, 41 NY2d 78). This case thus narrows itself down to the issue of whether the bartender was Taylor's agent. Even where the licensee admits that the bartender was "in charge" during his absence, the knowledge of the bartender will not be imputed to the licensee where the evidence does not support a finding that the employee had managerial authority (*Matter of Collins v State Liq. Auth.*, 48 AD2d 848, 849; see, generally, *Matter of Falso v State Liq. Auth.*,

43 NY2d 721). Absent a finding that the licensee had given the bartender unequivocal supervisory responsibility, the bartender should not be deemed an agent whose act may be imputed to the licensee (*Matter of Martin v State Liq. Auth.*, 41 NY2d 78, *supra*). There was insufficient evidence in this record to support a finding that the bartender was an agent of the petitioner who possessed managerial authority, and therefore, the bartender's conduct should not have been imputed to petitioner. Taylor testified that it was the bartender's duty to (1) deal with any disorder that might come up in the premises; (2) ask those who were involved in the disorder to leave; (3) call the police if the disorderly patrons refused to leave; and (4) make sure that the premises were operating in an orderly fashion. These duties are those which any solitary employee left alone in the premises would have. They are not indicative of managerial responsibility on the part of the employee. To adopt the position that the afore-mentioned testimony supports a determination of managerial responsibility comes unreasonably close to adopting a position that any time a single employee is left to operate the business, the owner is responsible for that employee's act. Such a stance is impractical and ignores the realities of the world of small businesses. So onerous a burden should not be placed on owners of businesses open almost 18 hours a day. Certainly, an owner cannot ignore that which should reasonably be perceived, but the record is devoid of any evidence that such a situation existed here.