■ In the Matter of TAVERNA EL PULPO, INC. v NEW YORK STATE LIQUOR AUTHORITY. — Upon the grant of reargument by this court, the petition is unanimously granted and the agency determination is annulled, to the extent indicated, on the law and the facts and in the exercise of discretion, without costs, and the matter is remanded to the agency, consistent with our opinion herein, for (1) reconsideration of the administrative determination with respect to the failure to report the Caamano arrest, and (2) reappraisal of the appropriate sanction, on the whole record, in light of that reconsideration. ¶ Petitioner's license was revoked and its $1,000 bond was forfeited after three charges were sustained stemming from two consolidated license revocation proceedings. On transfer of this CPLR article 78 proceeding to this court for consideration in the first instance, we unanimously confirmed the administrative determination without opinion (99 AD2d 1031). ¶ One of the administrative disciplinary proceedings had to do with the guilty plea of one Alonzo to criminal possession of a weapon in the fourth degree in October, 1981. A license may be revoked where an officer, director or at least 10% part owner of

a corporate licensee engages in misconduct, whether on or off the premises, which adversely reflects upon the character and fitness of the licensee. (9 NYCRR 53.1 [n].) Petitioner points out that Alonzo had sold his interest in the corporation three years before his arrest in September, 1981. However, the corporate records still reflected Alonzo as an officer of the corporation at the time of the incident, assertedly because petitioner's attorney in 1978 was of the mistaken belief that the removal of an officer did not require the filing of a corporate change with respondent. The regulation clearly applies to officers, directors or part owners. Since Alonzo still was an officer of record in respondent's files, petitioner was made to suffer the consequences. The failure to notify respondent of this change may have been merely an oversight. (Note that petitioner's bank was notified of the change in officers.) If this was merely an oversight, the failure to notify the State Liquor Authority, in and of itself, would not appear to warrant the extreme sanction of revocation. ¶ The other proceeding contained three specified charges concerning incidents which took place on the premises during August 4-6, 1980. A customer complained that he got into an altercation with one Caamano, who was a cook and coprincipal of petitioner, over the amount of change due on a food bill. The customer called the police, and while he was awaiting their arrival, Caamano allegedly struck him in the face. The customer had Caamano arrested the following night on a charge of assault. As a result, respondent charged petitioner with suffering or permitting the premises to become disorderly, in violation of subdivision 6 of section 106 of the Alcoholic Beverage Control Law. The other two specifications had to do with the conduct of Caamano, a coprincipal, in participating in this altercation, and petitioner's concealment, during the license renewal application procedure in 1981, of Caamano's subsequent arrest (on charges of felonious assault and possession of a gun). ¶ Respondent, after hearing, dismissed the second of these charges but sustained the first and third. The third charge sustained alleged that petitioner should have reported this incident within 48 hours, as part of the renewal application procedure. This was error, as the sequence of events and a review of the Alcoholic Beverage Control regulations should demonstrate. Petitioner was issued a license for the 1980-1981 period on March 1, 1980. The coprincipal, Caamano, was arrested on the night of August 5-6 of that year. The criminal charge was dismissed on February 9, 1981. The renewal application was not signed for submission until February 14 of that year. In other words, at the time that the renewal application was submitted, there were no criminal charges pending against the coprincipal. ¶ The hearing officer ruled that "the licensee was required to report the arrest of Comano [sic] within forty eight hours * * * that the licensee did not report the arrest of Camano [sic] within the required time nor did it report the arrest of Camano [sic] in its renewal application for 1981-1982." From this the hearing officer concluded that petitioner had "concealed and/or suppressed" the August, 1980 arrest of Caamano in connection with its application for 1981-1982 license renewal. ¶ The sustaining of this charge was based on a misinterpretation of the regulations. A licensee is required to notify respondent, within 48 hours, of any arrest "occurring between the date of the execution of the application for the license or permit, or the renewal thereof, and the date of issuance of such license or permit." (9 NYCRR 53.1 [j].) The arrest did not take place between the date of execution of the renewal application and the date of issuance of the license. Thus, the 48-hour-notification rule with regard to arrests is inapplicable. Likewise, an applicant is required to notify respondent "within 48 hours, of any change of the facts stated in the application, or submitted in support thereof, which change occurs prior to the actual issuance of the license or permit by the Authority." (9 NYCRR 53.1 [b].) The criminal charges having been dismissed against Caam-

ano, there were no such facts prior to actual issuance of the renewal license which had to be reported to respondent within 48 hours. ¶ Obviously, the purpose of subdivisions (j) and (b) of section 53.1 is to prevent fraud in concealing from the Authority derogatory data which comes to light during the application procedure. There was no such derogatory data to be reported here. The 48-hour reporting requirement was thus misapplied by respondent. ¶ There is, however, a general prohibition against "[f]raud, misrepresentation, false material statement, concealment or suppression of facts by the licensee or permittee in connection with an application for a license or permit or for the renewal thereof", contained in the first sentence of 9 NYCRR 53.1 (b), the punishment for which can be revocation. It is open to question whether this general prohibition against concealment and fraud is limited by the next sentence in subdivision (b) of section 53.1, to the effect that "any change of facts stated in the application" must be reported within 48 hours. There does not appear to be any other requirement to report any and all material changes of circumstances which predate the application process. However, the renewal application form does ask for a listing of all arrests and dispositions "which have occurred since the signing of the application for the currently held license and have not been reported to the Authority". Petitioner answered "N/A" to this inquiry. It is quite possible that this, in and of itself, was a fraudulent concealment of a material change in circumstances. However, the hearing officer's recommendation seems to have been based not on fraud or concealment in the renewal application, but rather on violation of the 48-hour reporting requirement which, as indicated above, was clearly inapplicable. It is also possible that the failure to include the information about Caamano's arrest 6 months earlier, as requested on the form but apparently not mandated by any regulation, was an oversight. If that be the case, then revocation was too harsh a penalty, and the appropriateness of sanction should be reconsidered on remand. ¶ This leaves the charge of disorderliness stemming from the Caamano altercation on the night of August 4-5, 1980. License revocation for such an incident is a matter of judgment reserved for respondent (9 NYCRR 53.1 [q]), as is the sanction for failure to report the transfer of Alonzo's interest in the corporation (9 NYCRR 53.1 [n]). The issue is whether revocation, or denial of license renewal, was too harsh, indeed so disproportionate to these offenses as to be "shocking" to one's sense of fairness (*Matter of Stolz v Board of Regents*, 4 AD2d 361, 364). A remand is necessary to permit the agency to determine the appropriate action to be taken (*Rob Tess Rest. Corp. v New York State Liq. Auth.*, 49 NY2d 874; *Matter of Ahsaf v Nyquist*, 37 NY2d 182; cf. *Matter of Shore Haven Lounge v New York State Liq. Auth.*, 37 NY2d 187, 191; CPLR 7803, subd 3). Concur — Murphy, P. J., Asch, Bloom, Fein and Alexander, JJ.