■ In the Matter of JOHN A. HESLOP, Petitioner, v BOARD OF EDUCATION, NEWFIELD CENTRAL SCHOOL DISTRICT, Respon-

dent. [594 NYS2d 871] —Harvey, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Tompkins County) to review a determination of respondent which terminated petitioner's employment.

Petitioner, a retired postal worker, was employed by respondent as a part-time school bus driver. In August 1991, disciplinary charges pursuant to Civil Service Law § 75 were preferred against petitioner charging him with misconduct and incompetence as a result of two separate incidents involving his alleged use of physical force against two students.

The first incident, on March 7, 1991, occurred after petitioner, who was driving a busload of children home from school, pulled his bus over to the side of the road to investigate a problem with students in the back of the bus. As he did so, Joey Peterson, a hearing-impaired sixth grader sitting in the front of the bus, began misbehaving and creating a disturbance. When petitioner returned to the front of the bus, Peterson claimed that petitioner "yelled" at him and pushed his head against the bus window with such force that he began to cry. When he arrived home, Peterson's mother observed that he had a large bump on his head.

The second incident at issue occurred on the morning of May 31, 1991 when petitioner told kindergartner Lhinz Palmieri to stop eating a muffin in violation of bus regulations. Palmieri apparently refused to do so. Consequently, petitioner pulled the bus over to the side of the road, walked back to Palmieri's seat and, according to Palmieri, threw the muffin out of the bus window and "smacked" her on her cheek.

As a result of these accusations, which petitioner essentially denied, petitioner was formally charged with (1) misconduct in the use of physical force against Peterson and Palmieri, and (2) incompetence for improperly handling the discipline of these students.* Following a hearing held before an Administrative Law Judge (hereinafter ALJ), petitioner was found guilty of both charges. As a penalty, the ALJ recommended that petitioner's employment as a school bus driver be terminated. Respondent adopted the ALJ's findings and recommendation and terminated petitioner's employment, effective De-

---

* On February 20, 1991, respondent's Superintendent of Schools had issued a memorandum to all members of respondent's faculty and staff explaining the State Education Department's regulation against corporal punishment, i.e., that "[no] teacher, administrator, officer, employee or agent of any school district in this State * * * shall use corporal punishment against a pupil" (8 NYCRR 19.5 [a]).

cember 3, 1991. Petitioner thereafter commenced this CPLR article 78 proceeding which was ultimately transferred to this Court pursuant to CPLR 7804 (g).

We confirm. Initially, we disagree with petitioner's contention that the March 7, 1991 incident involving Peterson was not properly a subject for disciplinary action. Despite petitioner's arguments to the contrary, the fact that petitioner was sent a "counseling memorandum" from his supervisor (warning him that the reporting of one more incident of violence such as the Peterson matter would result in "further disciplinary action") does not mean that petitioner was ultimately punished twice for the same offense *(see, Tomaka v Evans-Brant Cent. School Dist.,* 107 AD2d 1078, *affd on mem below* 65 NY2d 1048). In *Holt v Board of Educ.* (52 NY2d 625), the Court of Appeals held that such a letter is to be construed as a warning and an admonishment to comply with district policy; it is not a form of punishment in and of itself *(supra,* at 633). The Court also ruled that such a memorandum would not preclude the institution of disciplinary proceedings based on the conduct at issue therein *(supra,* at 634) and that the memorandum could, in fact, be used to support such a disciplinary proceeding, if timely brought *(supra,* at 634, n 2). Accordingly, we find no error in the use of the Peterson incident as a ground for the disciplinary proceeding against petitioner, nor do we find that the letter was improperly included in respondent's case against petitioner.

Next, we reject petitioner's contention that the ALJ improperly admitted the testimony of Peterson (age 12) and Palmieri (age 6) without any foundation as to their ability to understand the meaning of an oath. Assuming that this issue was preserved for appellate review, we conclude that no error requiring annulment occurred. There is nothing in the record to indicate that the children's testimony was unreliable. Notably, compliance with the technical rules of evidence is not mandated in these hearings *(see,* Civil Service Law § 75 [2]; *see also, Matter of Ronkese v Board of Educ.,* 82 AD2d 1011) and all relevant, material evidence is generally admissible so as to further the public interest in ascertaining the truth in these matters *(see, Matter of Sowa v Looney,* 23 NY2d 329, 333). In any event, both Peterson and Palmieri testified with considerable clarity and detail. Respondent's counsel specifically elicited from Palmieri prior to her unsworn testimony that she knew the difference between the truth and a lie and that she knew the importance of telling the truth at the hearing. Peterson's sworn testimony was also clear and straightforward

and was substantiated in great part by the testimony of his mother. The ALJ specifically found that Peterson understood the significance of an oath. Additionally, although petitioner complains that the qualifications of respondent's interpreter for the deaf (who was present at the hearing to aid Peterson) were never stated on the record, we find this issue irrelevant because Peterson read the lips of his questioners and answered them vocally, without the use of sign language. Accordingly, we find none of petitioner's objections to the children's testimony to be well taken.

Petitioner's remaining arguments have been examined and have also been found to be meritless. We find respondent's determination of petitioner's guilt to be fully supported by substantial evidence in the record. While it is true that there was conflicting testimony, it was respondent's duty to assess matters of credibility *(see, Matter of Ross v Oxford Academy & Cent. School Dist.,* 187 AD2d 898; *Matter of Ronkese v Board of Educ., supra).* As for the penalty imposed, we do not find it to be " 'so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness' " *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 233, quoting *Matter of Stolz v Board of Regents,* 4 AD2d 361, 364). Along those lines, we note that, rather than involving an isolated instance, petitioner was accused of two separate, but similar, incidents of apparent overreaction and loss of control. Moreover, petitioner's performance evaluations, while disclosing that he was a dependable and capable driver, also show that he had difficulty controlling his temper when disciplinary problems arose. Given this pattern and respondent's responsibility for the children entrusted to its care, we decline to disturb the penalty despite petitioner's otherwise fine employment record *(see, Matter of Cargill v Sobol,* 165 AD2d 131, 135, *lv denied* 78 NY2d 854; *Matter of Keith v New York State Thruway Auth.,* 132 AD2d 785, 786).

Yesawich Jr., J. P., Crew III and Mahoney, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.