Matter of OTR Media Group Inc. v New York City Dept. of Bldgs. (2024 NY Slip Op 24100)

[*1]

Matter of OTR Media Group Inc. v New York City Dept. of Bldgs.

2024 NY Slip Op 24100

Decided on March 27, 2024

Supreme Court, Kings County

Levine, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 27, 2024
Supreme Court, Kings County

In the Matter of the Application of 
 OTR Media Group, Inc., Petitioner, For a Judgment Pursuant to Article 78 of the CPLR,

against
New York City Dept. of Buildings, Respondent.

Index No. 500731/2019

Attorneys for Petitioner
Frank R. Seddio, Esq.
Seddio & Associates, P.C.
One Metrotech Center, Suite 1803
Brooklyn, NY 11201
Law Office of Alan Schwartz
2635 Nostrand Ave., Apt. 4E
Brooklyn, NY 11210
Attorney for Respondent
Kerri A. Devine
New York City Law Department
100 Church Street
New York, NY 10007-2607

Katherine A. Levine, J.

Petitioner OTR Media Group ("OTR" or "petitioner") brings this CPLR Article 78 petition seeking to annul and rescind respondent NYC Department of Building's ("DOB" or "City") decision not to renew petitioner's outdoor advertising company ("OAC") license. DOB tendered basically the same reasons to support its decision not to renew that it invoked when it [*2]initially revoked OTR's license in 2016, which resulted in a previous Article 78 brought by petitioner challenging the revocation. By decision dated October 25, 2017, this court vacated the revocation, holding that the penalty of revocation of license was disproportionate to the alleged offense and shocking to the conscience and directed DOB to issue a lesser penalty. As will be set forth below, the standards for revocation and non-renewal are the same, DOB has tendered the same but fewer reasons for non-renewal as it did for revoking the license, the violations that DOB relies upon as the predicate for denying the license occurred between 2009 and 2014, before its decision to not renew, and, to date, OTR has paid close to $2 million in penalties. As such, this court finds that the penalty of denying the renewal, and hence precluding OTR from operating, is excessively harsh and directs DOB to issue a conditional renewal.
OTR is registered as an outdoor advertising company and is in the business of leasing outdoor advertising space and subsequently renting these spaces for advertisements. In 2006, significant revisions were made to the City's sign laws, establishing a comprehensive regulatory framework. This framework included new zoning and permitting provisions that strictly regulated outdoor advertising signs. Specifically, the updated regulations prohibited the display of any outdoor advertising signs within 900 linear feet and view of designated areas such as "arterial highways" or parks measuring at least one-half acre in size. These regulations also restricted the placement of advertising signs to specific zoning districts, primarily manufacturing and certain commercial areas.
In 2006, OTR filed suit against the City of New York contending that the newly enacted sign laws violated various constitutional provisions, including the Equal Protection and Free Speech clauses of the U.S. Constitution. The courts granted OTR's application for a stay of enforcement of the regulatory scheme pending the decision in the case. In OTR Media Group, Inc. v. City of New York, 83 AD3d 451 (2011), the Appellate Division First Department affirmed the lower court's granting of summary judgment dismissing OTR's complaint that the fines levied by the DOB were unconstitutional. Following the resolution of the constitutional case, the City initiated enforcement of the sign laws against OTR, which OTR claims was done with "discriminatory vengeance" in retribution for OTR filing its constitutional challenge. OTR claims that this discriminatory enforcement led it to eventually file for bankruptcy. In 2011, the City initially moved to revoke OTR's license, but this action was automatically stayed by OTR's Chapter 11 bankruptcy filing. OTR remained under bankruptcy protection until the bankruptcy petition was dismissed in 2013.
In January 2014, the City resumed collection efforts and initiated proceedings in Supreme court, NY County, seeking to hold OTR and Ari Noe in contempt for failure to comply with discovery related to the outstanding judgments. Subsequently, Justice Chan issued an Order of Contempt and Warrant for Noe's arrest. At that time, the unpaid judgments amounted to $1,693,100 plus interest. The City and OTR reached an interim agreement wherein OTR was told to make installment payments of $60,000 per month toward the unpaid judgments, comply with sign laws, and propose a settlement offer. The City agreed to temporarily suspend enforcement action during which time OTR alleges that it fully adhered to the terms of this agreement. The City concedes that OTR complied with the payment agreement for some time but eventually ceased making payments. The City extended the payment agreement after its expiration date of October 15, 2015 provided that OTR continued making monthly payments of $60,000 towards the judgments and complied with the City's discovery demands. However, OTR failed to fulfill its discovery obligations and no settlement was reached.
By Notice of Registration Revocation dated February 5, 2016, the DOB Sign Enforcement Unit informed OTR that it owed $1,008,789 plus interest and penalties imposed by the City's Environmental Control Board ("ECB") for various outdoor advertising sign violations, plus an additional $4,194.75 to reimburse the City for sign removal costs that the City had incurred, and moved to revoke OTR's registration due to non-payment. Subsequently, on February 22, 2016, DOB sent a revised letter indicating a reduced outstanding amount of $983,789.00.
A hearing was held before the Office of Administrative Trials and Hearings (OATH) where the administrative law judge ("ALJ") extensively reviewed OTR's interaction with the ECB, which adjudicates Notices of Violations ("NOV") that are issued by the DOB for infractions of either the Administrative Code (such as safety and attachment of signs) and the zoning resolution (location and size of signs). The ALJ ultimately dismissed a number of NOVs, thus reducing the amount OTR owed by around $400,000. Relevant to the present matter, the ALJ noted that between 2008 and 2014, DOB issued at least 200 NOVs to OTR for a variety of violations of the sign laws and that ECB sustained many of these EOBs and imposed fines totaling over $2,000,000. The ALJ then reiterated the history of lawsuits brought by OTR and its settlements with DOB mandating that OTB pay $60,000 per month in judgments and noting that the Notice of Registration Revocation at that time showed that OTR owed the reduced amount of $983,789 in outstanding penalties.
The ALJ then methodically went through Charge 1—Failure to pay civil penalties in the amount of $637.850.73 plus interest (which by now had been reduced two times) for 77 NOVs (which presumably meant that the other 123 NOVs were either paid by OTR or dismissed).[FN1]
Of particular relevance to the instant petition, the ALJ refused to consider eight NOVs issued to Splash Media totaling $50,000. The ALJ noted that while the record indicated that at some point Splash Media and OTR were "affiliate" OACs within the meaning of AC § 28-502.1, the record was "inconclusive" as to whether OTR was now liable for NOVs issued to Splash Media and that OTR and that the ALJ would not uphold those eight NOVs against OTR. She then found that approximately 69 NOVs remained unpaid totaling $579,850.73 plus interest, which OTR did not dispute. The ALJ also dismissed some of the zoning resolution violations of having a sign within 900 feet view of an arterial parkway or within 200 feet view of a park, but found that OTR still had accumulated three or more violations within a 36-month period of the zoning resolution at sign locations near a highway or park, one of the reasons allowed for revoking or not renewing a OAC license under NYC Administrative Code § 28-502.3 Finally, she found that OTR still had not reimbursed the City for the cost of removing an illegal sign in the amount of $4,194.75.
By decision dated August 24, 2016, the ALJ recommended revocation of OTR's registration for failure to pay civil penalties totaling $597,850.73. DOB adopted the. recommendation and revoked the registration (OAC license). On August 30, 2016, OTR petitioned the Supreme court for a stay of DOB's decision to revoke its outdoor advertising [*3]company license pending resolution of this action. Justice Partnow issued a temporary restraining order staying enforcement of the revocation decision.
The City then filed a motion to change venue, which this court heard on May 25, 2017.[FN2]
After hearing a summary of the various cases before Justice Chan and other courts, this court denied the motion to change venue. The court then questioned the parties as to how much OTR actually owed and why there were multiple discrepancies in what the City claimed was owed and whether OTR had complied with various settlement agreements. The court then inquired generically about whether DOB had the authority to assess a penalty other than revocation. The court directed the City and OTR to work out a schedule wherein the City would submit an answer and OTR would reply, and extended the stay pending receipt of further papers.
During a hearing held on October 25, 2017, this court chastised the City for still not submitting an answer and noted that there were many problems with the OATH report, including numerous discrepancies as to how much OTR paid, how much it still owed, whether DOB had issued duplicate tickets to OTR, and whether there was even proof that anyone could see the signs that were allegedly within 900 feet of an arterial highway in violation of the zoning resolution. OTR contended that despite the stay the courts had put on revoking the license, its clients were unwilling to commit to further advertising due to the possible suspension and revocation of OTR's license. OTR also asserted, and DOB confirmed, that it had paid $1.3 million before the OATH hearing and had paid another $680,000 during the pendency of the OATH hearing.
By decision dated October 25, 2017, this court, upon reviewing the OATH report and recommendation, the order of the DOB commissioner, the petition and transcripts of oral argument before this court, basically upheld the factual findings of OATH, but found the penalty of revocation of OTR's outdoor advertising license was disproportionate to the offenses and shocking to the judicial conscience. The court found that OTR had made a good faith attempt to cure its violations by paying close to $2,000,000 by the time of the OATH decision, which the City did not refute. The court also warned OTR not to commit any more violations. The court thus vacated the order revoking OTR's license and granted the City two weeks to submit an answer as to what type of penalty other than suspension or revocation should be imposed or to reach a settlement.[FN3]
The City indicated that a settlement might be reached if OTR paid its fine or there was a negligible balance left and OTR stipulated to comply with the sign law going forward. (Tr. 10/25/2017 at 20-21). Subsequently, by order dated May 31, 2018, this court ruled that the City had failed to comply with the court's October 25, 2017, order to submit an answer that addressed what penalty other than revocation should be imposed, and denied DOB's motion to reargue the issue because DOB failed to present any new facts or arguments.
On November 13, 2018, OTR applied to DOB to renew its OAC registration. By Notice of Intent Not to Renew dated December 7, 2018, the DOB informed OTR that pursuant to AC § 28-502.3, DOB intended not to renew OTR's registration because OTR had 1) failed to pay civil penalties of approximately $279,900, not including interest, imposed pursuant to AC § 28-502.6 by ECB (now known as OATH) or reimburse the City for the $4,194.75 cost to remove an illegal sign; and 2) violated the zoning resolution for illegal arterial and public park sign postings at eight locations during a 36 month period between 2009 and 2014.
By letter dated January 4, 2019, OTR responded to the notice [FN4]
by claiming that DOB is barred by the doctrines of collateral estoppel and res judicata from refusing to renew OTR's license, since the charges were the basis for the previous Article 78 proceeding and were predicated upon violations that OTR had accrued between 2009 and 2014. OTR also argued that the violations contained in Charge 2—that it had accrued more than three violations of the zoning resolution in a 36-month period—were barred by the statute of limitations, which gives DOB three years under the Administrative Code to move for revocation. Finally, OTR argued that its purported failure to pay for the sign removal cannot be the basis of revocation or refusal to renew since AC § 28-503.3(iv) provides that DOB "may revoke, suspend or refuse to renew the registration of an outdoor advertising company if such company failed to pay civil penalties" whereas the charge of $4,194.75 is merely "a standard debt" for reimbursement for the cost of sign removal and not a civil penalty.
On January 10, 2019, DOB sent a Final Determination not to Renew pursuant to AC § 28-502.3, as OTR failed to pay outstanding civil penalties imposed by the ECB totaling approximately $279,000, along with accrued interest. The letter further indicated that OTR also owed penalties incurred by a subsidiary, Splash Media, and $4,194.75 pursuant to Article 503 of the Code for the cost of removing an illegal sign. Notably, the letter indicated that the City had withdrawn Charge 2—failure to comply with AC § 28-502.3(iii) by violating the zoning resolution on more than three occasions within a 36-month period—as a basis for non-renewal.
On January 10, 2019, OTR filed the instant petition seeking to annul and rescind DOB's decision not to renew its outdoors advertising company license. Following a status conference, the court, by Order dated June 8 2022, directed the parties to brief whether DOB applies the same standards for determining whether to renew or revoke an OAC registration. The Order also directed DOB to furnish an accounting detailing the amount owed by petitioner in penalties and fines related to the relevant notices of violation, along with a record of payments made and their date. The parties subsequently submitted supplemental briefs.
Ruling
Although the papers still do not conclusively establish how much OTR owed at various points during the two Article 78 proceedings, it is clear that OTR paid close to $2,000,000 in fines between when DOB sought to revoke OTR's license and when DOB notified OTR of its intent not to renew the license. On February 26, 2024, the City confirmed by email in response to the court's inquiry "that the 2016 Notice of Registration Revocation and the 2019 Registration Non-Renewal were based on the same violations and OTR's continued failure to pay civil penalties based on those violations. The difference between these two [actions] is in the amount [*4]of outstanding fines. This difference is due to OTR paying some of those civil penalties, but is also possibly due in part to some of those penalties being written off due to the eight-year statute of limitations on enforcing such penalties."
While OTR disputes that it still owes $279,000 in fines, it is clear that this amount pertains to violations from 2009 to 2014 and are not new, and that this amount was included in the total amount due and owing when this court rendered its first decision in 2017 finding the penalty of revocation to be onerous and shocking to conscience. It is unclear whether the sum of $279,000 now includes the penalties owed by Splash Media for eight NOVs totaling $50,000. However, per the OATH Report, the City is barred from now taking any punitive action against OTR for any judgments owed by Splash given the Report's finding that the record was inconclusive as to whether OTR and Splash Media were still affiliates and hence responsible for each other's NOVs and that OTR was not responsible for Splash Media's NOVs. Although the City has not clarified this point, it is possible that OTR only owes $229,000. Finally, the court agrees that OTR's failure to reimburse the City for $4,194.75 for the cost of removing a sign does not constitute a civil penalty and cannot enter the equation in assessing whether OTR's license should be renewed.
This court used the OATH decision as the predicate for its previous decision that the penalty of revocation was too harsh and shocked the conscience and relies upon that decision in considering DOB's decision not to renew the registration. Both parties agree that revocation and non-renewal of OACs are governed by the same criteria. Under AC § 28-502.3,[FN5]
the DOB [*5]"may revoke, suspend or refuse to renew the registration of an outdoor advertising company or impose fines or other penalties" for certain violations of the zoning regulation.[FN6]
They also agree that the statute uses permissive language by using the word "may" and that it is within DOB's discretion with respect to revocations and non-renewals. They also agree that the only difference between revocation and failure to renew is procedural: although RCNY § 49-2(b) requires notice and an opportunity to be heard for both revocations and non-renewals, only a revocation is entitled to a formal OATH proceeding with witness testimony before an ALJ.
There is a paucity of cases which discuss the binding effect of a revocation determination upon a renewal determination. The City cites two very dated cases for the proposition that when a non-renewal determination is based upon the same facts that provided the basis for a revocation determination to revoke a license, the determination not to renew "was not arbitrary and capricious where additional factors were considered in the renewal determination" citing Collins v State Liquor Authority 48 AD3d 848-49 (2d Dept. 1975) (emphasis added). There, the Second Department found that an application for renewal of a liquor license must be viewed in the same light as the original application for a license, the standard of review being "whether the record discloses circumstances which leave no possible scope for the reasonable exercise of that discretion" citing Mtr of Stracquadanio v Department of Health of City of NY 285 N Y 93, 96; Matter of Wager v State Liq. Auth., 4 N Y 2d 465). In addition to the charges sustained at the revocation hearing and incorporated as part of the non-renewal proceeding, additional charges were sustained at the non-renewal proceeding such as the issuance of a letter warning to petitioner due to an altercation at this premises, a seven-day suspension for sale of alcoholic beverages to minors on February 24, 1973, and a sale of alcoholic beverages on credit. The court ruled that prior adverse history may properly be considered in determining whether a license should be renewed, and that considering this adverse history, "the Liquor Authority's actions were not arbitrary and capricious." Id.
The instant matter is distinguishable from Collins since here, the City tendered fewer, not additional, factors in support of its non-renewal determination. The City argues that it relied upon "new factors" in its instant non-renewal determination; i.e. OTR's continued failure to pay outstanding penalties during the intervening time between the revocation and non-renewal determinations. The court finds this argument to be specious. There are utterly no new facts that the City considered since OTR stopped obtaining violations after 2014 and the outstanding violations that the City relied upon were considerably less—to the tune of $300,000—at the non-renewal phase than at the revocation phase.
The courts must uphold a penalty imposed by an administrative agency under CPLR 7803 (3) "unless it shocks the judicial conscience and, therefore, constitutes an abuse of discretion as a matter of law." Featherstone v Franco, 95 NY2d 550, 554 (2000). See, Mtr. of [*6]Harp v N.Y.C. Police Dept, 96 NY2d 892, 894 (2001); Mtr of Kelly v Safir, 96 NY2d 32, 38 (2001); Mtr of Pell v Bd. Of Educ; U.F.S.D. No.1, Towns of Scarsdale & Mamaroneck, 34 NY2d 222, 235 (1974). CPLR 7803 was enacted to make it possible to ameliorate harsh impositions of sanctions by administrative agencies. AThat purpose should be fulfilled by the courts not only as a matter of legislative intention, but also in order to accomplish what a sense of justice would dictate" 34 NY2d at 235. See, Mtr of McDougall v Scoppetta 76 AD3d 338, 341 (2d Dept. 2010). Thus, while due deference must be given to a determination of an administrative agency, (see Mtr of Harp, 96 NY2d at 894; Mtr of Kelly, supra, 96 NY2d at 38), a court cannot operate merely as a rubber stamp of the administrative determination "if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." Mtr of Sullivan v County of Rockland, 192 AD3d 895, 897 (2d Dept. 2021) citing to Mtr of Pell, supra, 34 NY2d at 233; Scoppetta, 76 AD3d 338 (2d Dept. 2010).
An administrative penalty is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subject to it that it is disproportionate to the misconduct, incompetence, failure, or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the dereliction of the individual. Mtr of Sullivan v County of Rockland, 192 AD3d 895, 897 (2d Dept. 2021) (penalty of demotion by four salary grades, resulting in an approximate 37-percent decrease in salary, was so grave in its impact on the petitioner that it was disproportionate to the misconduct); Mtr of McDougall, supra, 76 AD3d at 341 (2d Dept. 2010).
In many cases, after upholding the findings of violations as supported by substantial evidence, the courts have ordered that a less harsh penalty be imposed. In Mtr. Of B.P. Global Funds, Inc. V NY S Liquor Auth., 169 AD3d 1506 (4th Dept. 2019), the Fourth Department found that substantial evidence supported the agency's determination that petitioner's employees violated Alcoholic Beverage Control Law § 106 (15) by impeding respondent's investigation and failing to maintain employment and payroll records (ABC Law § 106 (12)). However, the court found that the cancellation of petitioner's liquor license as a penalty was "so disproportionate to the offense as to be shocking to one's sense of fairness." Id at 1507. Although petitioner had previous infractions, the court concluded that, "[u]nder all the circumstances of this particular violation . . . the cancellation of petitioner's license was too severe a penalty" and the court therefore vacated the penalty insofar as it cancelled petitioner's liquor license, and remitted the matter to the agency for imposition [***4] of an appropriate penalty less severe than cancellation. Citing Mtr of Pell, supra, 34 NY2d 222, 232, the court stated that a "result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct . . . of the individual, or to the harm or risk of harm . . . to the public generally . . . threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual." (Pell, at 233-235 [internal citations omitted]). See Schlass v. Swarts, 2010 NY Misc. LEXIS 3684, *1 (Sup. Ct. NY Co. 2010).
In Runway Towing Corp. Inc. v. N.Y.C. Dep't of Consumer Affairs, 2021 NY Misc. LEXIS 51477 (Sup. Ct. NY Co. 2021), the court first noted the difference between a revocation and a decision not to renew a license: while the petitioner would have been entitled to an evidentiary hearing on a determination whether to revoke or suspend an existing license, [*7]petitioner's application to renew the expiring license required only a hearing in which petitioner could submit records and other documentary evidence for respondent's consideration. Quoting Testwell, Inc v New York City Dept of Bldgs, 80 AD3d 266, 273-274 (1st Dept 2010), the court explained:
'Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood . . . In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment'. (Bell v Burson, 402 US 535, 539 [1971]; Mtr of Daxor Corp. v State of NY Dept. of Health, 90 NY2d 89, 98 [1997], cert denied 523 US 1074 [1998]). Accordingly, due process may prevent the revocation or suspension of a license without notice and a hearing. However, once a license expired, the issuance or renewal of said license was an "exercise of discretion" as there was no property interest in the renewal of an expired license and no constitutional due process right to a hearing.
Runway Towing, supra.
Despite this difference, the court applied the same standard to assessing whether the penalty imposed was too harsh and disproportionate to the offense. "Although the foregoing assertions of the petition mischaracterizes respondent's decision as a 'suspension or revocation of a license', rather than the denial of license renewal, in the opinion of this court, to the extent that such petition alleges "de minimus or non-willful violations or where a monetary fine or penalty can achieve the goal of ensuring compliance with applicable laws, statutes, rules and regulations", it brings up for review the question whether respondent's "denial of license renewal, was too harsh, indeed so disproportionate to these offenses as to be 'shocking' to one's sense of fairness" (Taverna El Pulpo, Inc v New York State Liquor Authority, 103 AD2d 701, 703 [1st Dept 1984]). The court then found that the respondent's assessment of the ultimate penalty, the denial of renewal, was too harsh in this instance.
The court then looked to the case of Apple Towing Co, Inc v NYC DCWP (Supreme Ct Kings County Index No. 518787/2020). Underlying the denial of license renewal to petitioner tow truck company was petitioner's initial refusal to produce any documents in response to a subpoena. Ultimately, the petitioner was found to have overcharged its customers on over 400 occasions. Respondent in its answer admitted that petitioner in fact had produced up to 50,000 records that the "237 tow overcharges in a two-year period assessed by petitioner, though by no means de minimus, are only slightly more than half of the 400 instances of overcharges over a two-year period that were the basis of the renewal denial." Runway Towing, supra at 6, citing to Apple Towing. The Apple Towing court found that given the company's operation as a licensed tow trucking company for 17 years, now employing 35 vehicles and 39 staff, "fourteen years of which petitioner operated free of any adjudicated violations," the punishment of non-renewal was shockingly grave in its consequences. The Runway court posited examples of lesser penalties that the City had the discretion to impose, such as probation on a monthly basis.
This court finds the analysis in Runway and Apple Towing to be controlling here. Since this court already determined that the penalty of revocation of registration was excessive and shocking to one's conscience, based upon OATH's finding that OTR failed to pay civil penalties totaling $597,850.73 for DOB violations accrued from 2009 to 2014 and accruing three or more violations of the zoning resolution by displaying signs within 900 feet of an arterial highway, it begs all credulity for the DOB to now seek non-renewal, placing OTR out of business based upon the very old violations that this court has already ruled upon. OTR has not accrued any [*8]new violations, and in fact has paid off approximately $300,000 more in civil penalties, between the time of the OATH hearing and the Notice of Non-Renewal, reducing the amount it owes to at most $279,000, or $229,000 if the Splash Media violations were included in the higher sum. Ironically, the City is not even predicating its decision of non-renewal on OTR's purported violation of the zoning resolution. And as set forth above, the City is barred from attributing any civil penalties owed by Splash Media to OTR under the OATH decision. Finally, as OTR argued, the Administrative Code does not include failure to reimburse the City for removal of a sign as a grounds for revocation or non-renewal, and in any event the court finds that the amount OTR owes for the removal, $4,194.75 is de minimus.
The court grants the petition to the extent that it directs DOB to renew the license with appropriate conditions, such as paying the adjudicated penalties due and owing (after determining whether the $50,000 attributable to Splash Media violations are included in the $279,000 and must be deducted) and not obtaining any new violations within the duration of the renewal period.
This constitutes the decision and order of the court. 
Dated: March 27, 2024
HON. KATHERINE A. LEVINE
J.S.C.

Footnotes

Footnote 1:That the City has never had an absolute finite sum that OTR owed at any point is revealed by the discrepancy of the amount owed in the original and amended notices of registration non-renewal—$1,008,789 plus interest and $983,789.00, respectively, and at the time of the OATH hearing, $637.850.73 plus interest.

Footnote 2:Apparently, the City did not submit an answer within this time period because it had filed a motion to change venue.

Footnote 3:The record is unclear as to why the City did not submit a timely answer after the May 25, 2017, conference. However, based upon the City's failure to submit its answer at the time of the October 25, 2017, hearing, the court ruled that it was not going to prolong the case anymore and that it had sufficient information to decide that the penalty was disproportionate to the offenses found. The court therefore permitted the City to submit an answer only on what lesser penalty than revocation should be imposed.

Footnote 4:The court sets forth OTR's opposition here since it basically reiterates these positions in its petition challenging the refusal to renew.

Footnote 5:"§ 28-502.3 Revocation or suspension of registration.

"The department may revoke, suspend or refuse to renew the registration of an outdoor advertising company or impose fines or other penalties where it is determined by the commissioner, after notice and the opportunity to be heard, that . . . (iii) such company has been found liable for or has admitted to violations of the zoning resolution under section 28-502.6 of this code committed on three or more occasions within a 36 month period, where such violations relate to the erection, maintenance, attachment, affixing, painting or representation in any other manner on a building or premises of advertising signs, as defined in section 12-10 of the zoning resolution, at locations where the display of such advertising signs is not permitted under the zoning resolution or at locations where the display of such advertising signs violates the size, height, or illumination provisions of the zoning resolution, and such signs are located within a distance of nine hundred linear feet from and within view of an arterial highway or within 200 linear feet (60 960 mm) from and within view of a public park with an area of one half acre or more, (iv) such company has failed to pay any civil penalties imposed or amounts owed to the city pursuant to section 28-502.6 of this code or article 503 of this chapter or, (v) such company has violated the department's rules pertaining to outdoor advertising companies. No application for registration by an outdoor advertising company or any affiliate thereof shall be accepted for filing by the department for a period of five years after revocation of or the refusal to renew the registration of such outdoor advertising company pursuant to this code. The department shall not accept or process any applications for permits to install, erect or alter signs pursuant to this code or for the maintenance of signs pursuant to section 28-501.1 of this code where such applications are filed by or where such signs are under the control of an outdoor advertising company or any affiliate thereof after the registration of such outdoor advertising company has been revoked or not renewed or during the term of any period of suspension of such registration. The commissioner may settle any proceeding in which the revocation, suspension or renewal of an outdoor advertising company's registration is at issue upon such terms and conditions as he or she may deem appropriate including but not limited to the agreement of an outdoor advertising company to remove signs along with supporting sign structures as a condition for the dismissal of such proceeding."

Footnote 6:See note 2, infra.