In the Matter of McGILLICUDDY's TAP HOUSE, LTD., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [868 NYS2d 383]—

Stein, J.

Petitioner was charged with and, following an administrative hearing, found in violation of Alcoholic Beverage Control Law § 106 (6) for suffering or permitting a licensed premises to become disorderly following an altercation that occurred in petitioner's bar in the Village of New Paltz, Ulster County. Respondent suspended petitioner's liquor license for 15 days and fined petitioner $6,500. Petitioner then commenced this CPLR article 78 proceeding seeking to annul respondent's determination, and Supreme Court transferred the matter to this Court pursuant to CPLR 7804 (g). Petitioner contends that the Administrative Law Judge improperly relied upon hearsay evidence in finding petitioner to be in violation of Alcoholic Beverage Control Law § 106 (6). We agree.

Respondent's determination must be upheld if supported by substantial evidence (*see* CPLR 7803 [4]; *Matter of Oneonta Water St. v New York State Liq. Auth.*, 279 AD2d 849, 850 [2001]). Hearsay evidence is admissible in administrative hearings and may, under appropriate circumstances, form the sole basis of an agency's determination (*see Matter of Ridge, Inc. v New York State Liq. Auth.*, 257 AD2d 625, 626 [1999]; *Matter of Fellowmen Community Dev. Corp. v New York State Liq. Auth.*, 219 AD2d 871 [1995]; *Matter of Karam v New York State Liq. Auth.*, 163 AD2d 869 [1990]). However, when the hearsay evidence is

seriously controverted, "common sense and elemental fairness suggest that" it may not constitute the substantial evidence necessary to support the authority's determination (*Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y.*, 24 NY2d 174, 179 [1969]; *see Matter of Ridge, Inc. v New York State Liq. Auth.*, 257 AD2d at 626-627; *Matter of Fellowmen Community Dev. Corp. v New York State Liq. Auth.*, 219 AD2d at 871; *Matter of Karam v New York State Liq. Auth.*, 163 AD2d at 869).

Here, the incident giving rise to the charges against petitioner occurred inside petitioner's bar at approximately 3:30 A.M. The issue for determination was not whether an altercation occurred, but whether petitioner took appropriate action or allowed the altercation to continue (*see Matter of Franz, Inc. v New York State Liq. Auth.*, 207 AD2d 592, 592 [1994]; *Jacobi v New York State Liq. Auth.*, 124 AD2d 1005 [1986]). The only evidence presented by respondent regarding the events that occurred inside petitioner's bar was the sworn written statement of a witness, Marshall Ross, which was made at the police station at 4:30 A.M. on the day of the incident. Ross did not testify at the administrative hearing.

According to Ross's statement, there was some confrontation between a male patron and several of Ross's friends inside the bar, prompting security to intervene and eject the offending male patron from the bar. However, Ross allegedly observed that patron in the bar 15 minutes later. Shortly thereafter, the earlier confrontation resumed and a friend of the patron who had previously been ejected started swinging a blade at Ross. Ross picked up a stool and swung it at the person attacking him, at which point a bouncer came over and grabbed Ross. "The next thing [Ross] knew, this guy started cutting people left and right." Ross was then thrown out of the bar and the police arrived.

Petitioner's head bouncer, Joseph Santiago, testified that he had not ejected any males from the bar on the morning in question, he was positioned at the front door, he did not see any other bouncer eject any males, and the other bouncers generally told him when they ejected someone from the bar. Santiago further testified that there was no indication that the altercation was going to occur and that, when he observed people converging in the back of the bar, he immediately ran towards them and yelled to the bartender to call the police. The bouncers were able to break up the altercation in a matter of moments and remove one group from the bar while allowing the other group to remain in the bar, which was an appropriate action according to one of the police officers who testified on respondent's

behalf. By the time Santiago removed the patrons from the bar, the police were already there. Santiago remained outside the bar to help keep the situation under control and to identify participants in the altercation.

Portions of Ross's hearsay statement setting forth his version of the events—including that petitioner's security personnel had allowed a patron who had previously been removed from the bar to return—were "seriously controverted" by the testimony of Santiago, who was subject to cross-examination (*Matter of Veronica C. v Carrión*, 55 AD3d 411 [2008]). Santiago's credibility was further bolstered by the testimony of two police officers that they knew Santiago, he had a good reputation, and he was helpful and cooperative. We also note that Santiago's explanation of the events was not inherently incredible (*see Matter of Hayes v New York State Liq. Auth.*, 39 AD2d 482, 484 [1972]). Nor does the fact that Santiago may have had an interest in the outcome of the proceedings render his testimony insufficient to seriously controvert Ross's hearsay statement (*see Matter of Ridge, Inc. v New York State Liq. Auth.*, 257 AD2d at 627; *Matter of Fellowmen Community Dev. Corp. v New York State Liq. Auth.*, 219 AD2d at 871). Furthermore, the Administrative Law Judge's decision to credit Ross's account was improper because his credibility could not be assessed (*see Matter of Veronica C. v Carrión*, 55 AD3d at 412).

In light of the fact that respondent's hearsay evidence was seriously controverted by the sworn testimony given on petitioner's behalf, which was subject to cross-examination, the hearsay evidence "did not amount to the substantial evidence necessary to support respondent['s] determination" (*Matter of Veronica C. v Carrión*, 55 AD2d at 412). Since the remaining witnesses who testified did not observe the events inside the bar, without Ross's statement, there is nothing in the record to indicate that petitioner was aware of and ignored escalating arguments between patrons (*see Matter of Hilly-Hand, Inc. v New York State Liq. Auth.*, 227 AD2d 996, 996 [1996]; *Matter of Franz, Inc. v New York State Liq. Auth.*, 207 AD2d at 592-593; *Matter of Bars R Us v New York State Liq. Auth.*, 192 AD2d 1050, 1051 [1993]; *Linda L. Byrne, Inc. v New York State Liq. Auth.*, 176 AD2d 1043, 1044 [1991]), or allowed a fight to continue for a long period of time without calling the police (*see Linda L. Byrne, Inc. v New York State Liq. Auth.*, 176 AD2d at 1044; *Matter of Highway Tavern Corp. v McLaughlin*, 105 AD2d 122, 140 [1984]). Rather, the only remaining evidence—including still photographs taken from a videotape of the bar during the time in question—supports the conclusion that the situation

involved an isolated, brief altercation that was spontaneous and unforeseeable, that it did not involve any misconduct or failure to take proper action by petitioner's employees, and that it could not have been avoided by reasonable supervision (*see Matter of Moonwalkers Rest. Corp. v New York State Liq. Auth.*, 250 AD2d 428, 428 [1998]; *Matter of Peanutbutter Jam v New York State Liq. Auth.*, 58 AD2d 703 [1977]).

Petitioner's remaining arguments are rendered academic.

Mercure, J.P., Spain, Rose and Kane, JJ., concur. Adjudged that the determination is annulled, without costs, and petition granted.