Clark, J.
(dissenting). We respectfully dissent. Initially, many of petitioner’s arguments challenging whether respondent State University of New York at Potsdam (hereinafter SUNY) complied with the notice and due process provisions of its code of student rights, responsibilities and conduct (hereinafter the student code of conduct) are unpreserved, as petitioner failed to raise them during his disciplinary hearing or on administrative appeal (see Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d 1292, 1294 [2014], lv denied 23 NY3d 908 [2014]; compare Matter of Monnat v State Univ. of N.Y. at Canton, 125 AD3d 1176, 1177 [2015]). To the extent that petitioner preserved, by raising them on administrative appeal, his claims that SUNY failed to provide written notice of *1204 the hearing to the female student (hereinafter the complainant) or require the complainant to attend the hearing (see Matter of Monnat v State Univ. of N.Y. at Canton, 125 AD3d at 1177; but see Matter of Shaffer v Leonardo, 179 AD2d 980, 980 [1992], lv denied 79 NY2d 758 [1992]), such claims are lacking in merit. The record establishes that the complainant “chose [ ]” not to attend the disciplinary hearing and, thus, that SUNY substantially complied with the requirement that the complainant be notified in writing of the date and time of the hearing (see Matter of Glenn v State Univ. of N.Y., Purchase Coll., 243 AD2d 712, 712-713 [1997]; see also Matter of Schuman v Westchester County Health Care Corp., 304 AD2d 585, 585 [2003], lv denied 100 NY2d 511 [2003]). Further, principles of due process do not require SUNY to compel the complainant’s attendance or to present nonhearsay evidence at the disciplinary hearing (see Matter of Budd v State Univ. of N.Y. at Geneseo, 133 AD3d 1341, 1343-1344 [2015], lv denied 26 NY3d 919 [2016]; Boykins v Fairfield Bd. of Ed., 492 F2d 697, 701 [5th Cir 1974], cert denied 420 US 962 [1975]). Moreover, even when afforded an opportunity to challenge the hearsay evidence against him, petitioner declined to question the individuals who interviewed the complainant after the incident. Accordingly, we are satisfied that SUNY substantially complied with the provision of its student code of conduct requiring that petitioner have the “right to offer witnesses and to challenge evidence and/or witnesses against him.” Despite the majority’s statement to the contrary, an evaluation of the merits of petitioner’s procedural arguments should not include a consideration of any potential effects that a finding of responsibility may have on his reputation or education or job prospects.
Petitioner also argues that substantial evidence does not support SUNY’s determination that he committed sexual misconduct in violation of the student code of conduct. Substantial evidence is a relatively “low” or “minimal” eviden-tiary standard, requiring less proof than a preponderance of the evidence (Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d 179, 188 [1998]; see Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011]; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180-181 [1978]). The standard of substantial evidence has been defined as “such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact” (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d at 180; accord Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d at 499), and it “demands only that a given inference is reasonable and plausible, not necessarily the most probable” *1205 (Matter of Miller v DeBuono, 90 NY2d 783, 793 [1997] [internal quotation marks and citation omitted]; accord Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d at 498; see Matter of Rauschmeier v Village of Johnson City, 91 AD3d 1080, 1082 [2012], lv denied 19 NY3d 802 [2012]). Where, as here, substantial evidence exists to support SUNY’s disciplinary determination, made after a hearing, this Court must uphold such determination, “irrespective of whether a similar quantum of evidence is available to support other varying conclusions” (Matter of Collins v Codd, 38 NY2d 269, 270 [1976]; accord Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d at 503; see Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1120 n [2013]).
The student code of conduct requires that there be affirmative consent, that is “spoken words or behavior that indicates, without doubt to either party, a mutual agreement to participate,” to sexual intercourse or other sexual activity. Here, because petitioner conceded at the hearing that the complainant did not verbally consent to sexual intercourse, her actions had to indicate to petitioner without a doubt that she had agreed to participate in sex.
The complainant maintained, in her account to the campus police officer hours after the encounter and in her subsequent account to respondent Annette Robbins, SUNY’s director of student conduct and community standards, that she did not consent to having sexual intercourse with petitioner. She stated that petitioner “tried touching her all over” and then proceeded to “g[e]t up,” “lock[ ] her [dormitory] room door” and “lead her to her bed.” The complainant reported that petitioner “began making out with her” and suggested that they have sex, but that petitioner did not ask for, nor did she give, her consent. Although the complainant acknowledged that she took off her shirt, she stated that petitioner took off her pants and that she thereafter “froze” and “ ‘let things happen’ from that point on.”* This evidence reasonably demonstrated that the complainant did not affirmatively consent, verbally or through her actions, to sexual intercourse. To be clear, taking off one’s own shirt is not, in and of itself, consent to sexual intercourse. Moreover, the majority’s unfortunate commentary concerning the complainant’s “inner turmoil” is misguided. The operative word “froze” is enough to indicate that claimant physically stopped responding to petitioner’s advances, conduct that would have *1206 and should have been readily apparent to petitioner. Under the student code of conduct, as well as principles of common sense, silence is not a sufficient “indicator [ ] of consent.”
In addition, many of the details that the complainant gave to the campus police officer and Robbins were corroborated by petitioner’s testimony. Indeed, petitioner testified that he kissed the complainant, that the complainant removed her shirt and that he removed the complainant’s bra and pants. Moreover, petitioner’s own testimony revealed that he had doubts as to whether the complainant consented to engaging in sexual intercourse. Petitioner testified that, after receiving a campus-wide rape alert, he sent the complainant a text message about the alert because he was “worried” and “didn’t know if she had reported [him.]” Petitioner’s testimony in this regard was indicative of a consciousness of guilt (see Matter of Franklin v D’Amico, 117 AD3d 1432, 1433 [2014]).
Although not revealed by the majority, petitioner repeatedly stated at the hearing that he had consumed a “ridiculous” amount of alcohol on the night in question, going so far as to state that he had been “intoxicated,” “unable to decide what was smart” and not “fully aware of . . . the situation.” He admitted that his memories of the night were clouded by his intoxication and that he “d[id not] remember everything,” only “parts.” He stated that he did not remember locking the door to the complainant’s room and that his testimony was the result of him “piecfing] . . . together” those parts of the night that he did remember. However, he stated that he was able to recall that the complainant told him not to “worry about it” when he stated that he did not have a condom and that the complainant had straddled him from above during intercourse. When challenged by a member of SUNY’s Hearing Board on his inconsistent testimony that the complainant had said “yes” to sex, petitioner immediately conceded that such testimony was inaccurate, thereby giving rise to an inference that other portions of petitioner’s testimony may have also been inaccurate, particularly in light of his hazy memory of the night. Moreover, petitioner’s self-serving testimony that the complainant had given him indications of consent was inconsistent with his testimony that he was “worried” that the complainant had reported him for rape.
In short, SUNY was presented with competing versions of events, each of which could reasonably support conflicting conclusions. In such cases, the duty of weighing the evidence and “ ‘making the choice’ ” between conflicting inferences lies exclusively within the province of SUNY (Matter of Collins v *1207 Codd, 38 NY2d at 270-271, quoting Matter of Stork Rest. v Boland, 282 NY 256, 267 [1940]; see Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1145-1146 [2016]; Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d at 1294). This Court “may not weigh the evidence or reject the choice made by” SUNY simply because it prefers a different conclusion (Matter of Stork Rest. v Boland, 282 NY at 267; accord Matter of Berenhaus v Ward, 70 NY2d 436, 444 [1987]; Matter of Collins v Codd, 38 NY2d at 270-271; see Matter of Axel v Duffy-Mott Co., 47 NY2d 1, 6 [1979]). This Court may only assess whether SUNY’s “choice” is supported by substantial evidence (see CPLR 7803 [4]; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d at 1146; Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d at 1120 n). To that end, we find that the complainant’s version of events set forth by the campus police officer and Robbins and petitioner’s corroboration of those events, together with petitioner’s statements indicating a consciousness of guilt and his concession that some of his earlier testimony was inaccurate, provided substantial evidence for SUNY’s determination that the complainant did not affirmatively consent to sexual intercourse with petitioner and, thus, that he committed sexual misconduct (see Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d at 1145-1146; Matter of King v New York State Dept. of Health, 295 AD2d 743, 744 [2002]). Consequently, SUNY’s finding of responsibility should be upheld.
Although not raised by petitioner, the majority attacks the complainant’s hearsay accounts, presented by the campus police officer and Robbins, as having been “seriously controverted” by petitioner’s testimony and, thus, unable to constitute substantial evidence. Courts have long held that hearsay evidence may properly form the basis for an administrative determination, provided that such hearsay evidence is “sufficiently relevant and probative or sufficiently reliable and . . . not otherwise seriously controverted” (Matter of Doctor v New York State Off. of Alcoholism & Substance Abuse Servs., 112 AD3d 1020, 1022 [2013] [internal quotation marks and citations omitted]; see Matter of Sookhu v Commissioner of Health of State of N.Y., 31 AD3d 1012, 1013-1014 [2006]; Matter of Giles v Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs., 199 AD2d 613, 614 [1993]). Here, the complainant and petitioner were the only witnesses to the encounter and, thus, the complainant’s hearsay accounts were certainly relevant and probative as to whether she affirmatively consented to sex with petitioner. Further, the hearsay evidence was not unreliable or seriously *1208 controverted by petitioner’s testimony. To the contrary, as previously discussed, petitioner’s testimony was in large part consistent with the accounts given by the complainant to the campus police officer and Robbins. While petitioner gave conflicting evidence as to whether the complainant’s behavior indicated consent to sex, such testimony simply presented a credibility issue for SUNY to resolve. His testimony did not, as the majority concludes, seriously controvert the complainant’s competing version of events (compare Matter of McGillicuddy’s Tap House, Ltd. v New York State Liq. Auth., 57 AD3d 1052, 1052-1053 [2008]; Matter of Hayes v New York State Liq. Auth., 39 AD2d 482, 484 [1972]). Thus, because substantial evidence supports SUNY’s determination to credit the complainant’s account over that of petitioner, such determination should not be disturbed (see Matter of Collins v Codd, 38 NY2d at 270-271).
As to the sanction imposed, we are unpersuaded by petitioner’s assertion that the penalty of expulsion was so disproportionate to the offense of sexual misconduct so as to be shocking to one’s sense of fairness (see Matter of Idahosa v Farmingdale State Coll., 97 AD3d 580, 581 [2012], lv denied 19 NY3d 813 [2012]; Matter of Beilis v Albany Med. Coll. of Union Univ., 136 AD2d 42, 44 [1988]; see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]), particularly given SUNY’s obligation to protect the safety and well-being of all of its students, including the complainant (see Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d at 1294; Matter of Quercia v New York Univ., 41 AD3d 295, 297 [2007]), and its overall goal of “creating and maintaining an educational environment free from . . . sexual misconduct.” Nor is the penalty unlawful because SUNY’s Appellate Board recommended, without providing its reasons, the enhanced penalty of expulsion to the President of SUNY. As the majority recognizes, an administrative appellate body does not offend principles of due process by enhancing, sua sponte, the severity of a disciplinary penalty (see Matter of Kabnick v Chassin, 89 NY2d 828, 830 [1996]; Matter of Wahba v New York State Dept. of Health, 277 AD2d 634, 636 [2000]) and, in doing so, it need not identify its reasons (see Matter of Stolz v Board of Regents of Univ. of State of N. Y., 4 AD2d 361, 365 [1957]; compare Matter of McCarthy v Board of Regents of State of N.Y., 177 AD2d 889, 890 [1991]).
While the majority does not find the penalty to be unlawful, it nevertheless states that fairness requires a discussion of, what our colleagues in the majority perceive as, “the absence of *1209 a[ ] . . . clear articulation [in the student code of conduct] that an enhanced penalty may result from a student’s choice to appeal.” Upon review of relevant sections of the student code of conduct, we disagree. In a section entitled “[t]he Appellate Board,” SUNY’s sexual misconduct policy expressly states that the Appellate Board has the authority to “impose any of the sanctions” listed in the student code of conduct and may, upon appeal, “alter the sanctions imposed below.” Further, the student code of conduct makes clear that SUNY’s director of student conduct and community standards may oppose any student appeal and that the Appellate Board may consider the reasonableness of the recommended sanction and, if deemed necessary, “alter” such sanction. In our view, this language is sufficient to alert a reasonable reader — indeed, a college student — to the possibility that the Appellate Board could find the initial penalty to be unreasonably lenient and, consequently, impose a harsher one. Moreover, it bears noting that, under the student code of conduct, only the President, or her designee, can impose a sanction of suspension or expulsion and that, had the Appellate Board agreed with the Hearing Board’s recommended penalty of, among other things, a one-semester suspension, SUNY’s President conceivably could have rejected such penalty as too lenient.
Accordingly, for the reasons stated, we would confirm the determination and dismiss the petition.
Lynch, J., concurs.
Adjudged that the determination is annulled, without costs, petition granted and respondent State University of New York at Potsdam is directed to expunge all references to this matter from petitioner’s school record.

 The complainant indicated to Robbins that she had been involved in a prior “traumatic” incident that caused her to freeze in response to petitioner’s unwanted advances.